UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STATE OF QATAR,

*Plaintiff*,

v.

FIRST ABU DHABI BANK PJSC, SAMBA
FINANCIAL GROUP SJSC, AND JOHN DOE
DEFENDANTS 1–20,

*Defendants*.

---

Case No. 1:19-cv-05567 (AJN)

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION TO REMAND

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ........................................................................................................................ 3

I.     The Parties ...................................................................................................................... 3

II.    Defendants' Fraudulent Scheme..................................................................................... 4

III.   Defendants' Removal ...................................................................................................... 5

ARGUMENT .............................................................................................................................. 6

I.     Legal Standards for Removal.......................................................................................... 6

II.    Defendants Cannot Remove Under the FSIA Because They Are Not "Foreign States."... 7

III.   Removal Is Not Proper Under the Act of State Doctrine Because It Was Not Raised By
       Plaintiff's Well-Pleaded Complaint and It Does Not Apply. .......................................... 10

       A.     The Act of State Doctrine Does Not Apply Because Plaintiff's State-Law Claims Do
              Not Involve a Challenge to an "Official Action by a Foreign Sovereign" In Its Own
              Territory. ................................................................................................................. 11

       B.     Defendants' Defensive Invocation of the Act of State Doctrine Is Insufficient to Create
              Federal Court Jurisdiction. ..................................................................................... 15

IV.    Removal Is Not Proper Under *Grable* Because Defendants Cannot Satisfy Any of the
       Required Elements. ......................................................................................................... 16

       A.     Plaintiff's State-Law Claims Do Not "Necessarily Raise" a Federal Issue. ................... 18

       B.     Plaintiff's State-Law Claims Raise No "Actually Disputed" Issue of Federal Law....... 21

       C.     Plaintiff's State-Law Claims Raise No "Substantial" Issue of Federal Law. ................ 21

       D.     Plaintiff's State-Law Claims Are Not "Capable of Resolution in Federal Court Without
              Disrupting the Federal-State Balance Approved by Congress." ..................................... 22

V.     Plaintiff Is Entitled to an Award of Attorney Fees and Costs.......................................... 22

CONCLUSION ........................................................................................................................... 23

# TABLE OF AUTHORITIES

**CASES**                                                                                       **Page(s)**

*Alfred Dunhill of London, Inc.* v. *Republic of Cuba*,
    425 U.S. 682 (1976) .................................................................................................13

*Benjamin Wey* v. *Nasdaq, Inc.*,
    2019 WL 1324416 (S.D.N.Y. Mar. 25, 2019) ...............................................17, 20

*Caterpillar Inc.* v. *Williams*,
    482 U.S. 386 (1987)...........................................................................................15, 16

*CWCapital Cobalt VR Ltd.* v. *CWCapital Inves. LLC*,
    2018 WL 2731270 (S.D.N.Y. May 23, 2018) .......................................................21

*Dart Cherokee Basin Operating Co., LLC* v. *Owens*,
    574 U.S. 81, 135 S. Ct. 547 (2014) ........................................................................6

*de Csepel* v. *Republic of Hung.*,
    714 F.3d 591 (D.C. Cir. 2013) ..............................................................................14

*Dougherty* v. *Sears Holdings Corp.*,
    2012 WL 6588817 (S.D.N.Y. Dec. 12, 2012) .........................................................7

*Empire Healthchoice Assur., Inc.* v. *McVeigh*,
    547 U.S. 677 (2006)...........................................................................................17, 21

*Fracasse* v. *People's United Bank*,
    747 F.3d 141 (2d Cir. 2014)...............................................................................17, 22

*Gen. Elec. Capital Corp.* v. *Cutler*,
    2015 WL 7444627 (S.D.N.Y. Nov. 23, 2015)......................................................23

*Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005)....................................................................................... passim

*Gunn* v. *Minton*,
    568 U.S. 251 (2013)...................................................................................17, 21, 22

*Hill* v. *Delta Int'l Mach. Corp.*,
    386 F. Supp. 2d 427 (S.D.N.Y. 2005).....................................................................7

*John Wiley & Sons, Inc.* v. *Glass*,
    2010 WL 1848226 (S.D.N.Y. May 7, 2010) ..........................................................7

*Kashef* v. *BNP Paribas S.A.*,
    925 F.3d 53 (2d Cir. 2019)............................................................................. passim

*Koch* v. *Koch*,
   2018 WL 4963168 (D. Conn. Oct. 15, 2018) ...................................................................6

*L.Y.E. Diamonds Ltd.* v. *Gemological Inst. of Am. Inc.*,
   2017 WL 1207839 (S.D.N.Y. Mar. 31, 2017) ...................................................................7

*Sung ex rel. Lazard Ltd.* v. *Wasserstein*,
   415 F. Supp. 2d 393 (S.D.N.Y. 2006)...............................................................................18

*Liana Carrier Ltd.* v. *Pure Biofuels Corp.*,
   672 Fed. App'x 85 (2d Cir. 2016)......................................................................................22

*Lupo* v. *Human Affairs Int'l, Inc.*,
   28 F.3d 269 (2d Cir. 1994)..................................................................................................6

*McLaughlin* v. *Bayer Essure, Inc.*,
   2018 WL 3535142 (E.D. Pa. July 23, 2018).....................................................................21

*McNutt* v. *Gen. Motors Acceptance Corp. of Indiana*,
   298 U.S. 178 (1936).............................................................................................................7

*Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Manning*,
   136 S. Ct. 1562 (2016)........................................................................................................22

*Mosher* v. *Davita Healthcare Partners Inc.*,
   2016 WL 2997509 (S.D.N.Y. May 23, 2016) ...................................................................23

*New York* v. *Shinnecock Indian Nation*,
   686 F.3d 133 (2d Cir. 2012)....................................................................................10, 16, 20

*Pac. Westeel Racking Inc.* v. *Evanston Ins. Co.*,
   2008 WL 400935 (S.D.N.Y. Feb. 14, 2008)......................................................................6

*Patrickson* v. *Dole Food Co.*,
   251 F.3d 795 (9th Cir. 2001) ..............................................................................................8

*PCVST Mezzco 4, LLC* v. *Wachovia Bank Commercial Mortg. Tr. 2007-C30*,
   2015 WL 153048 (S.D.N.Y. Jan. 12, 2015) .....................................................................18

*Petersen Energia Inversora S.A.U.* v. *Argentine Republic*,
   2016 WL 4735367 (S.D.N.Y. Sept. 9, 2016)...............................................................14, 15

*Petersen Energia Inversora S.A.U.* v. *Argentine Republic & YPF S.A.*,
   895 F.3d 194 (2d Cir. 2018)....................................................................11, 14, 15, 16

*Republic of Iraq* v. *ABB AG*,
   768 F.3d 145 (2d Cir. 2014)....................................................................16, 19, 20

*Republic of Philippines* v. *Marcos*,
  806 F.2d 344 (2d Cir. 1986)..................................................................19, 20

*Rivet* v. *Regions Bank of Louisiana*,
  522 U.S. 470 (1998)...................................................................................16

*Samantar* v. *Yousuf*,
  560 U.S. 305 (2010).................................................................................1, 9

*Savino* v. *Savino*,
  590 F. App'x 80 (2d Cir. 2015) .................................................................23

*In re Standard & Poor's Rating Agency Litig.*,
  23 F. Supp. 3d 378 (S.D.N.Y. 2014)...........................................17, 18, 19, 20

*In re Tobacco/Governmental Health Care Costs Litig.*,
  100 F. Supp. 2d 31 (D.D.C. 2000) ........................................................18, 19

*Tokhtaman* v. *Human Care, LLC*,
  2018 WL 5447543 (S.D.N.Y. Oct. 29, 2018) .............................................20

*United Bank Ltd.* v. *Cosmic Int'l, Inc.*,
  542 F.2d 868 (2d Cir. 1976)........................................................................14

*Vasura* v. *Acands*,
  84 F. Supp. 2d 531 (S.D.N.Y. 2000)...........................................................6

*W.S. Kirkpatrick & Co.* v. *Envtl. Tectonics Corp., Int'l*,
  493 U.S. 400 (1990)................................................................11, 12, 13, 14

**STATUTES**

28 U.S.C. § 1331 .............................................................................................15

28 U.S.C. § 1441(a) ........................................................................................15

28 U.S.C. § 1441(d) ......................................................................................7, 8

28 U.S.C. § 1447(c) ................................................................................3, 22, 23

28 U.S.C. § 1603(a) .....................................................................................7, 8, 9

28 U.S.C. § 1605A(a)(1)..................................................................................9

Federal Rule of Civil Procedure 7.1 ..............................................................8

Plaintiff State of Qatar respectfully submits this memorandum of law in support of its motion to remand this common law fraud action to New York State Supreme Court.

## PRELIMINARY STATEMENT

In this case, the State of Qatar has sued two commercial banks, Defendants First Abu Dhabi Bank PJSC ("FAB") and Samba Financial Group SJSC ("Samba"), in New York State court, alleging counts of common law fraud, conspiracy to commit fraud, and aiding and abetting fraud.  The Complaint charges that FAB and Samba sent thousands of false bid/ask quotes for Qatar's currency, the Qatari Riyal, to foreign currency trading platforms in New York, for the purpose of manipulating the value of the Riyal to harm the State of Qatar.  The fact that Defendants were "in league with" others who sought to harm Qatar, including the Kingdom of Saudi Arabia and the United Arab Emirates ("UAE"), does not make these commercial banks "agencies or instrumentalities" of a foreign sovereign for purposes of the Foreign Sovereign Immunities Act ("FSIA"); and the fact that Saudi Arabia and the UAE encouraged the unlawful conduct does not make the private banks' fraudulent conduct subject to the act of state doctrine.  For the reasons explained below, none of Defendants' three purported bases for removal withstands scrutiny, and the case should be remanded.

*First*, Defendants nowhere assert—as they must to remove an action to federal court under the FSIA—that either of them is *actually* a "foreign state," or a political subdivision, agency, or instrumentality of a foreign state.  Instead, Defendants seek to remove this case under the FSIA on the basis that Samba and FAB, two publicly traded commercial banks, are alleged by Plaintiff to have acted "in league with" a foreign state.  But that is not sufficient, as the Supreme Court has specifically held that the FSIA does not apply to someone "acting on behalf of the foreign state." *Samantar* v. *Yousuf*, 560 U.S. 305, 319 (2010).

1

*Second*, the act of state doctrine does not provide a basis for removal.  That is a narrow doctrine that applies only if the outcome of a lawsuit *necessarily turns* on the validity of an official, non-commercial act of a foreign sovereign performed within the sovereign's own territory.  *See Kashef* v. *BNP Paribas S.A.*, 925 F.3d 53, 58–59 (2d Cir. 2019).  But the claims in this case do not turn on any official acts of Saudi Arabia or the UAE.  The Complaint does not assert any claims against Saudi Arabia or the UAE or seek a judgment invalidating their conduct.  Instead, this case is a common law fraud action against two commercial banks that submitted phony bid/ask quotes to trading platforms in New York.  Samba and FAB never assert that their phony bid/ask quotes were valid "official acts" of a foreign sovereign.  Defendants' acts also did not solely occur within the territory of a foreign sovereign, as Samba and FAB submitted their fake quotes to trading platforms in New York.  In any event, the act of state doctrine is an affirmative defense, and even it were a valid one, which it is not, federal jurisdiction cannot be invoked solely on the basis of an affirmative defense.

*Third*, Samba and FAB contend that Plaintiff's state-law claims implicate "significant federal issues" of foreign relations of the United States justifying removal under *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).  But the Supreme Court and Second Circuit have repeatedly held that *Grable* is a narrow doctrine, providing for federal jurisdiction only where interpretation of a significant and disputed issue of federal law is necessary to deciding the case.  Samba and FAB do not identify in their removal notice what federal issue is substantial or disputed, much less necessary to resolving Plaintiff's state-law claims against two commercial banks that committed fraud in New York.

In short, because the Complaint does not raise any federal causes of action, implicate any official acts of foreign sovereigns, or interfere with the foreign relations of the

United States, this case belongs in New York State Supreme Court, where it was filed.
Moreover, because Samba and FAB's bases for removal are unreasonable and foreclosed by
Supreme Court and Second Circuit precedent, this Court should award Plaintiff its attorney fees
and costs under 28 U.S.C. § 1447(c), which grants the Court discretion to award fees for
meritless attempts to remove cases to federal court.

## BACKGROUND

### I.      The Parties

Plaintiff State of Qatar is a foreign sovereign state.  (Compl. ¶ 11.)[1]  Its currency,
the Riyal, is pegged to the U.S. Dollar at an exchange rate of 3.64 Riyals to one U.S. Dollar (the
"Peg"), and that rate has been stable for more than a decade.  (*Id.* ¶ 12.)  The Peg provides
consistency and reliability to foreign investors (*id.*), and is the bedrock of Qatar's monetary
policy (*id.* ¶ 39).  Regardless of the value the Riyal is trading at on overseas foreign exchange
markets, Qatar, as a matter of policy, stands ready to exchange 3.64 Riyals for a U.S. Dollar.  (*Id.*
¶ 40.)

Defendant Samba is a financial institution based in Saudi Arabia with branches
across the globe.  (*Id.* ¶ 16.)  In a recent case in another federal district court, Samba conceded in
a sworn declaration submitted by its Head of Legal that it is a "public banking firm."  *See* Decl.
of Abdulaziz I. Al-Missaind, *Seed Eco Lounge, LLC* v. *Meshari Alqahtani*, No. 4:18-cv-00217
(S.D. Ga. Nov. 15, 2018), ECF No. 11-1, ¶ 2 ("Al-Missaind Decl.") (Chepiga Decl. Ex. 1).  This
is, of course, inconsistent with being a "foreign sovereign" under the FSIA.

Defendant FAB is a financial institution based in the UAE with locations in the

---

[1]     References to "Compl." are to the Complaint filed by Qatar on April 8, 2019.  (*See* Ex. A-1 to Defendants'
Notice of Removal, ECF No. 2.)  References to "Chepiga Decl." are to the Declaration of Geoffrey R. Chepiga,
filed contemporaneously herewith.

United States and around the world.  (Compl. ¶ 15.)  It also is a public banking firm, not a

"foreign sovereign."  Its shares are publicly traded on the Abu Dhabi Securities Exchange.[2]

## II.     Defendants' Fraudulent Scheme

The facts regarding Defendants' fraud are set forth in detail in Plaintiff's

Complaint.  (*See* Ex. A-1 to Defendants' Notice of Removal, ECF No. 2.)  As explained in the

Complaint, beginning on or about Friday, June 23, 2017, Defendants and others began

manipulating Qatar's currency and other financial instruments (Compl. ¶ 64), in an effort to

devalue the Riyal and break the Peg (*id*. ¶ 5).  Specifically, Defendants and others tried to

artificially devalue the Riyal by submitting thousands of fictitious and depreciated bid/ask Riyal

quotes to foreign currency platforms hosted in New York by Bloomberg L.P. ("Bloomberg") and

Thomson Reuters ("Reuters").  (*Id*. ¶ 64.)  They made these fictitious quotes during the Eid al-

Fitr holidays—one of the holiest periods of the Muslim calendar—when markets in the region

traditionally have very little activity and when their false quotes were likely to have an impact on

the key composite foreign exchange rates that Bloomberg and Reuters compiled and published in

New York.  (*Id*. ¶ 5.)  The quotes were phony, as currency traders at FAB and Samba repeatedly

refused to transact at the quoted prices.  (*Id*. ¶ 6.)

Defendants' market manipulation had the desired effect.  The Bloomberg and

Reuters composite rates sharply depreciated.  (*Id*. ¶¶ 73–74, 86.)  In order to reassure investors,

maintain the Peg at 3.64 Riyals to the U.S. Dollar, and ensure an adequate supply of U.S. Dollars

to meet withdrawals, Qatar was forced to liquidate investments, including nearly $3 billion in

U.S. Treasury bills and notes held in accounts in New York, incur losses, and draw down foreign

---

[2]     First Abu Dhabi Bank, Abu Dhabi Securities Exchange, https://www.adx.ae/English/Pages/
ProductsAndServices/Securities/SelectCompany/default.aspx?listedcompanyid=NBAD&pnavTitle=First%20A
bu%20Dhabi%20Bank (last visited July 9, 2019).

currency reserves, using more than $40 billion to support its currency.  (*Id*. ¶¶ 129–30.)

As noted in the Complaint, a few weeks before Defendants Samba and FAB launched their manipulative scheme, Saudi Arabia (where Samba is headquartered), the UAE (where FAB is headquartered), and the Kingdom of Bahrain cut diplomatic ties with Qatar and imposed a blockade on Qatar.  (*Id*. ¶¶ 2, 22.)  These countries closed all land, sea, and air transportation links with Qatar; ordered their citizens to leave Qatar; declared a ban on all travel to and from Qatar; and instructed all Qatari residents and visitors to leave their territories within fourteen days.  (*Id*. ¶¶ 2, 22.)  Their efforts to isolate Qatar continue to this day; indeed, Saudi Arabia announced its intention to relocate a nuclear waste site to its border with Qatar and to dig a canal along the border, literally turning Qatar into an island.  (*Id*. ¶ 2.)  Plaintiff's Complaint describes the blockade of Qatar as background for and context about the fraud.  But in the Complaint, Plaintiff does not sue Saudi Arabia or the UAE, does not seek a finding that Saudi Arabia or the UAE acted unlawfully, and does not seek redress for any conduct committed by Saudi Arabia or the UAE.  Rather, Plaintiff's Complaint alleges that two commercial banks, FAB and Samba, committed common law fraud, entered into a conspiracy to commit fraud, and aided and abetted fraud.

## III.    Defendants' Removal[3]

On June 14, 2019, Samba filed a Notice of Removal "pursuant to 28 U.S.C. §§ 1441(a), 1441(d), 1446(a), the Foreign Sovereign Immunities Act, the principles espoused in *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and the Act of State Doctrine."  (ECF No. 1, at 1.)

---

[3]    Although Samba's Civil Cover Sheet (ECF No. 3) indicates that there is no jury demand, Plaintiff's Complaint stated "Jury Trial Demanded" on its cover sheet and included a jury trial demand (Compl. at Cover, 36).  For the avoidance of doubt, Plaintiff has demanded and continues to demand a trial by jury on all issues triable by jury.

Although the party invoking federal court jurisdiction bears the burden of establishing that removal is proper, Samba does not assert that it is a foreign state under the FSIA.  Instead, Samba attempts to remove this case based solely on its characterizations of the allegations in the Complaint.

FAB filed a "Consent to Removal" in which it "consents to and joins in the Notice of Removal" filed by Samba.  (ECF No. 5.)  FAB offers no independent arguments or allegations in support of removal.

## ARGUMENT

### I.     Legal Standards for Removal

Courts should "construe the removal statute narrowly" and "resolv[e] any doubts against removability."  *Lupo* v. *Human Affairs Int'l, Inc.,* 28 F.3d 269, 274 (2d Cir. 1994).  The standard is strict because "removal of a case implicates significant federalism concerns," and "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."  *Pac. Westeel Racking Inc.* v. *Evanston Ins. Co.,* 2008 WL 400935, at *1 (S.D.N.Y. Feb. 14, 2008) (internal quotation marks and citations omitted).

Defendants, as the removing parties, bear the burden of establishing that this Court has subject-matter jurisdiction.  *Vasura* v. *Acands*, 84 F. Supp. 2d 531, 533 (S.D.N.Y. 2000) ("The party invoking the Court's removal jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to remand.").  They are required to include "plausible allegation[s]" in their notice of removal that federal jurisdiction exists.  *Dart Cherokee Basin Operating Co., LLC* v. *Owens,* 574 U.S. 81, 135 S. Ct. 547, 554 (2014).  Where, as here, the removing parties make no "plausible factual allegations" that would give rise to federal jurisdiction, the Court should remand the case.  *Koch* v. *Koch*, 2018 WL 4963168, at *4–5 (D.

6

Conn. Oct. 15, 2018); *see also John Wiley & Sons, Inc.* v. *Glass*, 2010 WL 1848226, at *3 (S.D.N.Y. May 7, 2010) (noting that a "conclusory statement by a removing party" cannot form the basis for jurisdiction).

Additionally, even if Defendants had come forward with plausible factual allegations in support of removal (which they have not), where, as here, removal is contested, Defendants must then establish the facts alleged by "competent proof." *Hill* v. *Delta Int'l Mach. Corp.*, 386 F. Supp. 2d 427, 429 (S.D.N.Y. 2005). The burden to establish this Court's jurisdiction is not satisfied by "mere averment." *Dougherty* v. *Sears Holdings Corp.*, 2012 WL 6588817, at *1 (S.D.N.Y. Dec. 12, 2012) (quoting *McNutt* v. *Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936)).[4] And, "[i]f the removing party fails to meet [its] burden, the case must be remanded back to state court." *L.Y.E. Diamonds Ltd.* v. *Gemological Inst. of Am. Inc.*, 2017 WL 1207839, at *3 (S.D.N.Y. Mar. 31, 2017) (citation omitted).

## II.     Defendants Cannot Remove Under the FSIA Because They Are Not "Foreign States."

Under the FSIA, "[a]ny civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state" to federal court. 28 U.S.C. § 1441(d). A "foreign state" is in turn defined to "include[] a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). Thus, in order to remove this case pursuant to the FSIA, Defendants have the burden to plausibly allege— and, if jurisdiction is contested, prove—that, on April 8, 2019, when Plaintiff filed its Complaint,[5] one of the Defendants was a "foreign state" as defined by the FSIA.

---

[4]     The opinion states the name of the case as "*McNutt v. McHenry Chevrolet*," but in fact quotes and cites *McNutt* v. *Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

[5]     The determination of whether a defendant is a foreign sovereign or not is made at the time the complaint is filed. "By its terms, the FSIA applies only to an entity that 'is' a foreign state at the time of the suit."

Here, Defendants have wholly failed to allege that they are "foreign state[s]" as defined in the FSIA.  In fact, they do not even try.  Samba does not contend that it is a "foreign state" under the FSIA, and indeed it cannot.[6]  FAB makes no allegations whatsoever.

Defendants claim instead that they are entitled to remove this case under the FSIA because Plaintiff's Complaint purportedly "alleges that Defendant[s] act[ed] 'in league with the blockading countries' as foreign states, or as agents or instrumentalities of foreign states."  (ECF No. 1, ¶ 3.)  Defendants thus contend that they are entitled to remove this case "as an alleged 'foreign state' or as the agent or instrumentality of a foreign state."  (*Id.* ¶ 5.)[7]  This is wrong for two reasons:

*First*, there is no such thing as an "alleged foreign state" or "alleged agent" under the FSIA.  Defendants have the burden to plead (and if necessary, offer competent proof to establish) that they were actually "foreign states as defined in section 1603(a)" at the time Plaintiff filed its Complaint.  28 U.S.C. § 1441(d).  Section 1603(a) provides that a "foreign state . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state."  28 U.S.C. § 1603(a).

The text of Section 1603(a) does not include "alleged agents" of foreign states. *Id.*  Indeed, Defendants' repeated use of the word "agent" in the Notice of Removal is curious. (*See* ECF No. 1, ¶¶ 3, 5.)  The term "agent" is not mentioned in Section 1603, despite being used

*Patrickson* v. *Dole Food Co.*, 251 F.3d 795, 805 (9th Cir. 2001), *aff'd in part, cert. dismissed in part*, 538 U.S. 468 (2003).

[6]  Not only has Samba admitted in a declaration filed in another federal district court that it is a "public banking firm," *see supra* at 3, both Samba and FAB have filed Rule 7.1 statements in this case.  Since Federal Rule of Civil Procedure 7.1 applies only to "nongovernmental parties," the fact that Samba and FAB have both filed Rule 7.1 statements is another implicit admission that they are not governmental parties.

[7]  This statement is odd given that Defendants "do[] not . . . admit any of the allegations made in the Complaint" at all.  (ECF No. 1, ¶ 15.)  Defendants therefore seek to remove based on allegations they claim Plaintiff made—while simultaneously denying those very allegations.

8

elsewhere in the text of the FSIA.  *Compare* 28 U.S.C. § 1603(a) (defining "foreign state" as

including an "agency" but not an "agent"), *with* 28 U.S.C. § 1605A(a)(1) (denying foreign

sovereign immunity for certain acts "engaged in by an official, employee, or *agent of such*

*foreign state*") (emphasis added).  Under Section 1603, only an "agency or instrumentality" of a

foreign government, and not an *agent*, may remove a case to federal court.  *Samantar*, 560 U.S.

at 314–15.

       The text of Section 1603(a) also does not include entities that are "acting in

league with" foreign states.  *See* 28 U.S.C. § 1603(a).  Indeed, the Supreme Court has stated that

"[t]he [FSIA's] careful calibration of remedies among the listed types of defendants suggests that

Congress did not mean to cover other types of defendants never mentioned in the text."

*Samantar*, 560 U.S. at 319.

       Defendants cite no case to support this novel theory of "in league with"

jurisdiction, and we are aware of *no case* decided after *Samantar* that has allowed an entity other

than those specifically enumerated in Section 1603 to remove a case under the FSIA.  In

*Samantar*, the Supreme Court rejected the position Samba and FAB now espouse when it found

that a high-ranking official in the Somali government was not a "foreign state" for purposes of

Section 1603(a) even though the acts for which he was sued were undertaken in his official

capacity.  The Supreme Court explained that, "[r]eading the FSIA as a whole, there is nothing to

suggest" that "'foreign state' in § 1603(a)" includes someone "acting on behalf of the foreign

state."  *Id*.  Here, just as in *Samantar*, Defendants have not asserted that they meet the statutory

definition of a "foreign state" under Section 1603(a), but instead asserted that they were "acting

on behalf of the foreign state."  *Samantar* makes it clear that this theory does not work.

       *Second*, even if Plaintiff's allegations could somehow confer jurisdiction—which

they cannot, *see New York* v. *Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012)

("Jurisdiction cannot be created by the consent of the parties.")—Plaintiff did not allege that

Defendants are "foreign states."  Defendants' primary support for removal under the FSIA is

that, in paragraph 3 of the Complaint, Plaintiff purportedly "alleges that Defendant, acting 'in

league with the blockading countries' as foreign states, or as agents or instrumentalities of

foreign states, 'launched a campaign of financial warfare against Qatar.'"  (ECF No. 1, ¶ 3.)  Not

so.  The sentence in question reads, in full:  "Not satisfied with Qatar's physical isolation,

financial institutions and individuals in league with the blockading countries launched a

campaign of financial warfare against Qatar."  (Compl. ¶ 3.)  The sentence does not refer to

Samba or FAB as "foreign states, or as agents or instrumentalities of foreign states."  In fact, the

term "foreign state" does not appear anywhere in the Complaint.

   Defendants attempt to bolster their Notice of Removal by claiming that Plaintiff

alleged that Samba "has ties to the Saudi government.  Its largest shareholders include the

government of Saudi Arabia and its sovereign wealth funds."  (ECF No. 1, ¶ 3 (quoting Compl. ¶

16).)  But again, the fact that Samba "has ties to the Saudi government" does not mean that it is

the Saudi government, or that it is an agency or instrumentality of the Saudi government as

defined by the FSIA.  And FAB, as noted, makes no argument as to why it should be deemed a

foreign state.

   For all of these reasons, Defendants' assertions fall far short of pleading federal

court jurisdiction under the FSIA.

## III.   Removal Is Not Proper Under the Act of State Doctrine Because It Was Not Raised By Plaintiff's Well-Pleaded Complaint and It Does Not Apply.

   Defendants also assert that Plaintiff's claims implicate the act of state doctrine

because Plaintiff's common law fraud claims purportedly require a court to determine "whether

that court may sit in judgment of the sovereign acts of Saudi Arabia and the UAE."  (ECF No. 1,

¶ 7.)  This argument fails because:  (1) Plaintiff does not in fact ask the Court to sit in judgment

of official sovereign acts in the sovereign's territory—it asks the Court to sit in judgment of

private banks that committed fraud in New York; and (2) even if Defendants intend to assert the

act of state doctrine as an affirmative defense, a defense cannot be used to establish federal

question jurisdiction.

> **A.      The Act of State Doctrine Does Not Apply Because Plaintiff's State-Law
> Claims Do Not Involve a Challenge to an "Official Action by a Foreign
> Sovereign" In Its Own Territory.**

"The act of state doctrine bars U.S. courts from declaring invalid, and thus

ineffective as a rule of decision, the official act of a foreign sovereign."  *Kashef* v. *BNP Paribas

S.A.*, 925 F.3d 53, 58 (2d Cir. 2019).  The doctrine applies only "when a court *must* decide—that

is, when the outcome of the case turns upon—the effect of official action by a foreign

sovereign."  *W.S. Kirkpatrick & Co.* v. *Envtl. Tectonics Corp., Int'l*, 493 U.S. 400, 406 (1990).

As the Second Circuit has explained, where, as here, the "face of [plaintiff's] complaint makes

clear that it is not challenging [a foreign sovereign's] official acts," and "did not require the

district court to rule on the validity of any of [a foreign sovereign's] official acts," the act of state

doctrine does not apply.  *Petersen Energia Inversora S.A.U.* v. *Argentine Republic & YPF S.A.*,

895 F.3d 194, 212 (2d Cir. 2018).

In *Kashef*, the Second Circuit recently held—under circumstances similar to those

presented here—that the act of state doctrine did not apply to claims against a foreign bank that

allegedly conspired with a foreign state to commit genocide in Sudan.  925 F.3d at 61.  The

plaintiffs in *Kashef* sued BNP Paribas ("BNPP") under New York tort law, including "secondary

liability claims that BNPP conspired with or aided and abetted Sudan" in connection with the

Sudanese genocide.  *Id.* at 57.  BNPP had previously pleaded guilty to federal and state felonies

11

related to circumventing U.S. economic sanctions on Sudan, and "conceded that it had knowledge of the atrocities being committed in Sudan and of the consequences of providing Sudan access to U.S. financial markets." *Id.* at 56.

Although plaintiffs alleged that BNPP "conspired with or aided and abetted Sudan" in connection with a genocide, the Second Circuit held that the act of state doctrine did not apply to the claims. *Id.* at 55, 59. The Second Circuit stressed that "[t]he Supreme Court has made clear that the act of state doctrine has important boundaries. It is not a categorical rule of abstention that prohibits courts from deciding cases or controversies whenever issues of foreign relations arise." *Id.* at 58 (citing *W.S. Kirkpatrick*, 493 U.S. at 409). Rather, it is a narrowly circumscribed rule of law that "should not . . . be casually expanded 'into new and uncharted fields.'" *Kashef*, 925 F.3d at 58 (quoting *W.S. Kirkpatrick*, 493 U.S. at 409). Therefore, the doctrine applies only when a court would be "*required* . . . to declare invalid the official act of a foreign sovereign performed within its own territory." *Kashef*, 925 F.3d at 59 (quoting *W.S. Kirkpatrick*, 493 U.S. at 405).

*Kashef* directly refutes any argument that the act of state doctrine applies here. Plaintiff's Complaint does not sue Saudi Arabia or the UAE, and it does not seek a finding that Saudi Arabia or the UAE acted unlawfully. Nor does Plaintiff seek redress in this lawsuit for any conduct by Saudi Arabia or the UAE. Defendants assert that Plaintiff's claims will require a court to decide whether to sit in judgment of "sovereign acts" (ECF No. 1, ¶ 7), but fail to specify what "sovereign acts" Plaintiff's claims would require the Court to invalidate, much less why. The blockade of Qatar by Saudi Arabia, the UAE, and Bahrain may be relevant background and context, but Plaintiff's claims here are against two private actors that committed torts in New York by "submitting thousands of fictitious depreciated bid/ask quotes to foreign

currency platforms" in New York and manipulating the price of Qatari bonds through "wash sales" and related credit default swap ("CDS") purchases.  (Compl. ¶¶ 3, 5, 110.)

Plaintiff's claims do not implicate the act of state doctrine for at least four additional reasons (two of which are underscored by *Kashef*):

### 1.     Defendants' Market Manipulation Was Not an "Official Act" of State.

*First,* the act of state doctrine does not apply because Defendants have failed to allege that they manipulated Qatari financial instruments pursuant to an "official act" of Saudi Arabia or the UAE.  As explained above, "the act of state doctrine only applies if adjudicating the claims in question would require a court to declare invalid a sovereign's 'official act.'" *Kashef*, 925 F.3d at 60 (quoting *W.S. Kirkpatrick*, 493 U.S. at 405).  "To qualify as 'official,' an act must be imbued with some level of formality, such as authorization by the foreign sovereign through an official 'statute, decree, order, or resolution.'"  *Kashef*, 925 F.3d at 60 (quoting *Alfred Dunhill of London, Inc.* v. *Republic of Cuba*, 425 U.S. 682, 695 (1976)).  *Kashef* makes clear that a defendant invoking the act of state doctrine must point to "officially sanctioned policies," and put forth evidence such as a "statute, decree, order, resolution, or comparable evidence of sovereign authorization for any of the actions in question."  *Id* at 61.

Here, Defendants have not plausibly alleged that their manipulative conduct was an official policy of Saudi Arabia or the UAE.  Accordingly, they cannot invoke the act of state doctrine.

### 2.     Defendants Did Not Perform the Relevant Acts Within Their "Own Territory."

*Second,* the act of state doctrine applies only when "the official act of a foreign sovereign [was] performed within its own territory."  *W.S. Kirkpatrick & Co.*, 493 U.S. at 405.  Where, as here, the act in question did not "come to complete fruition" within the foreign

13

territory, the act of state doctrine does not apply.  *United Bank Ltd.* v. *Cosmic Int'l, Inc.,* 542

F.2d 868, 874 (2d Cir. 1976) (citation omitted).  Defendants here submitted fraudulent quotes to

the Bloomberg and Reuters platforms in New York.  Their acts therefore clearly did not "come

to complete fruition" in Saudi Arabia or the UAE.  Since Defendants' wrongful acts against

Plaintiff were committed outside of Saudi Arabia and the UAE, they were not performed by

Defendants "within [their] own territory" and cannot be subject to the act of state doctrine.

### 3.   Defendants Do Not Argue that the Market Manipulation Alleged Was a Valid Act of a Foreign State.

*Third,* Defendants cannot invoke the act of state doctrine because they do not

allege that their market manipulation was a valid act of a foreign state.  Where "[n]o one . . .

contends that [the alleged acts] are 'valid,'" and "the issue is simply whether [the acts]

occurred," the "inquiry into occurrence rather than validity is precisely what the Supreme Court

in *Kirkpatrick* held was not precluded by the act of state doctrine."  *Kashef*, 925 F.3d at 60.

Since Defendants do not assert that their market manipulation was a valid act of a foreign

sovereign, the act of state doctrine does not apply.  *See id.*

### 4.   Defendants' Market Manipulation Was "Purely Commercial Conduct."

*Fourth,* the act of state doctrine does not apply because the acts in question were

commercial in nature.  "[C]laims [that] challenge not sovereign acts, but rather commercial acts

[are] entitled to no deference under the act of state doctrine."  *de Csepel* v. *Republic of Hung.*,

714 F.3d 591, 604 (D.C. Cir. 2013) (internal quotation marks and citations omitted); *see also*

*Petersen Energia Inversora S.A.U.* v. *Argentine Republic*, 2016 WL 4735367, at *7 (S.D.N.Y.

Sept. 9, 2016) (the act of state doctrine does not apply to "purely commercial conduct"), *aff'd in*

*part*, appeal dismissed in part sub nom. *Petersen Energia Inversora S.A.U.* v. *Argentine*

*Republic & YPF S.A.*, 895 F.3d 194 (2d Cir. 2018).

The acts by Defendants that give rise to Plaintiff's causes of action were commercial (albeit fraudulent and unlawful).  Under the analogous commercial activity exception to the FSIA, a party "engages in commercial activity . . . where it acts in the manner of a private player within the market." *Petersen*, 895 F.3d at 205 (internal quotation marks and citations omitted).  Samba and FAB submitted thousands of fictitious currency quotes to Bloomberg and Reuters.  FAB and others also engaged in fraudulent "wash sales" of Qatari bonds to drive down bond prices, and then profited from their manipulation of Qatari bonds by purchasing CDS, which increase in value as bond prices decrease.  This conduct is quintessentially commercial and not subject to protection under the act of state doctrine.  *See Petersen*, 2016 WL 4735367, at *7.

### B.   Defendants' Defensive Invocation of the Act of State Doctrine Is Insufficient to Create Federal Court Jurisdiction.

Moreover, Defendants cannot use an affirmative defense to create federal question jurisdiction.  Plaintiff has pleaded only state-law claims.  (Compl. ¶¶ 131–54.)  Samba and FAB do not argue otherwise.  Rather, they appear to contend that their anticipated *defense* under the act of state doctrine creates federal question jurisdiction under 28 U.S.C. §§ 1331 and 1441(a).  That is not the law.  "The rule [on removal] makes the plaintiff the master of the claim . . . a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 392–93 (1987).

None of Plaintiff's state-law causes of action arises under federal law.  "A cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises an issue of federal law," meaning that "a right or immunity created by the Constitution or laws of

the United States . . . [is an] essential [element] of the . . . cause of action." *Shinnecock Indian Nation*, 686 F.3d at 138 (internal quotation marks and citations omitted). "A defense is not part of a plaintiff's properly pleaded statement of his or her claim." *Rivet* v. *Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (internal quotation marks and citations omitted).

Under Second Circuit precedent, the act of state doctrine is an affirmative defense. *Republic of Iraq* v. *ABB AG*, 768 F.3d 145, 165 (2d Cir. 2014) (describing the doctrine as "the affirmative defense that precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory") (internal quotation marks and citations omitted); *Petersen*, 895 F.3d at 212 ("The act of state doctrine provides an affirmative defense."). Since the act of state doctrine is an affirmative defense, Defendants cannot rely on it to remove this case. *See Caterpillar*, 482 U.S. at 393.

## IV. Removal Is Not Proper Under *Grable* Because Defendants Cannot Satisfy Any of the Required Elements.

Defendants' third purported basis for removal—that Plaintiff's common law fraud claims purportedly raise "federal issues"—also is unavailing. Plaintiff has pleaded only three causes of action against Defendants, the elements of which all arise under New York law: fraud, conspiracy to commit fraud, and aiding and abetting fraud. (Compl. ¶¶ 131–54.) No element of any of these claims turns on an issue of federal law, and Defendants do not argue otherwise. Rather, Defendants argue that they are entitled to remove this case based on the principles espoused in *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), which carved out a narrow exception to the well-pleaded complaint rule, but which does not come close to applying here.

As a starting point, in support of jurisdiction under *Grable*, Defendants again

16

mischaracterize the Complaint.  The Notice of Removal asserts that "Plaintiff, itself a sovereign state, seeks the intervention of an American court to resolve a dispute between it and two other nations (each an important U.S. ally), Saudi Arabia and UAE."  (ECF No. 1, ¶ 6.)  The Complaint seeks nothing of the kind.  It asserts claims against two private banks that committed torts in New York.  The Court is not called upon to resolve larger disputes between Qatar, on the one hand, and Saudi Arabia and the UAE, on the other.  For this reason alone, the Notice of Removal is deficient.

But setting that aside, and taking the Notice of Removal on its terms, it is bereft of facts that would support jurisdiction under *Grable*.  Under *Grable*, a federal court may exercise jurisdiction over state-law claims only if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn* v. *Minton*, 568 U.S. 251, 258 (2013).  The party "who seek[s] removal to federal court . . . bear[s] the burden of demonstrating that this case meets each of the four *Grable* factors."  *Benjamin Wey* v. *Nasdaq, Inc.*, 2019 WL 1324416, at *3 (S.D.N.Y. Mar. 25, 2019).

*Grable* allows for federal jurisdiction only in a "special and small category" of cases.  *Empire Healthchoice Assur., Inc.* v. *McVeigh*, 547 U.S. 677, 699 (2006).  The Supreme Court has found that *Grable* is an "extremely rare exception" to the rule that state courts have jurisdiction over state-law claims.  *Fracasse* v. *People's United Bank*, 747 F.3d 141, 144 (2d Cir. 2014) (quoting *Gunn*, 568 U.S. at 257).  "The mere presence of a federal issue in a state cause of action and the mere assertion of a federal interest are not enough to confer federal jurisdiction."  *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 395 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).  Here, Defendants meet none of the four *Grable* criteria,

much less all of them.

### A.     Plaintiff's State-Law Claims Do Not "Necessarily Raise" a Federal Issue.

Defendants have failed to plead any facts suggesting that Plaintiff's state-law claims against two private banks "necessarily raise" a federal issue.  Reading the Notice of Removal most generously, it asserts that Plaintiff's claims raise an unspecified issue of foreign relations, and that the Court therefore has jurisdiction under the federal common law of foreign relations.  Not so.

In order to demonstrate that "an issue is 'necessarily' raised," Defendants must show that "the issue is an 'essential element' of a plaintiff's claim."  *PCVST Mezzco 4, LLC* v. *Wachovia Bank Commercial Mortg. Tr. 2007-C30*, 2015 WL 153048, at *4 (S.D.N.Y. Jan. 12, 2015) (citation omitted).  A federal issue is "*necessary* to the adjudication of any claims found in the complaint" only if a cause of action "necessarily stands or falls based on a particular interpretation or application of federal law."  *Sung ex rel. Lazard Ltd.* v. *Wasserstein*, 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006).  Where, as here, the "crux of [the plaintiff's] claims is that [defendants] made false representations," and the claims "may be assessed entirely by applying [state] common law standards to the facts," the claims do not "necessarily raise" an issue of federal law.  *Standard & Poor's*, 23 F. Supp. 3d at 395–96 (internal quotation marks and citations omitted).

The question for a court presented by this case is not how to "resolve a dispute between [Qatar] and two other nations," as Defendants contend without detail or explanation. (ECF No. 1, ¶ 6.)  Rather, the question is whether "the named defendants engaged in . . . fraud," a question "not governed by federal common law at all, but by state common law."  *In re Tobacco/Governmental Health Care Costs Litig.*, 100 F. Supp. 2d 31, 37 (D.D.C. 2000). Plaintiff's claims stand in stark contrast to the claim at issue in *Grable*, in which "the plaintiff

would 'necessarily' have had to show a violation of federal law even if the defendant had never

removed the case to federal court and even if the defendant had never invoked federal law as a

defense." *Standard & Poor's*, 23 F. Supp. 3d at 396 (citing *Grable*, 545 U.S. at 314–15).  Since

Defendants have failed to explain how this lawsuit against two private banks would affect United

States foreign relations, much less what federal law the case would rise and fall on, Plaintiff's

lawsuit does not "necessarily raise" any federal issue.

　　　　　The only authority Defendants offer in the Notice of Removal in support of their

contention is *Republic of Philippines* v. *Marcos*, 806 F.2d 344 (2d Cir. 1986), which is

misplaced.  In *Marcos*, the Republic of Philippines brought a motion for a preliminary injunction

to freeze its former president's assets.  *Marcos*, 806 F.2d at 349.  The Second Circuit found that

there was federal jurisdiction because "the question whether to honor the request of a foreign

government that the American courts enforce the foreign government's directives to freeze

property in the United States" would "necessarily require determinations that will directly and

significantly affect American foreign relations."  *Id.* at 352, 354.  *Marcos* thus presented the

narrow question of whether courts "adjudicating ownership interests in property located within

the borders of the United States should respect the assertion of a claim to such property by a

foreign sovereign's newly installed government when the property was also claimed by the

foreign sovereign's former head of state."  *In re Tobacco/Governmental Health Care Costs

Litig.*, 100 F. Supp. 2d at 36.  Here, by contrast, the question for a court is whether Defendants,

two private banks, committed common law fraud by submitting fictitious bid/ask quotes to

trading platforms in New York.

　　　　　Notably, in a case much more analogous to this one, *Republic of Iraq* v. *ABB AG*,

in which the Republic of Iraq brought state-law tort claims against private banks, the Second

Circuit distinguished *Marcos* as a case about a foreign state's request to regain property from its former president.  768 F.3d 145, 172 (2d Cir. 2014).  The Second Circuit held in *Republic of Iraq* that "the district court correctly determined that [the plaintiff's] claim arose under state law rather than federal common law" where the plaintiff asserted only "nonstatutory wrongs describ[ing] traditional types of torts by private entities."  *Id.*  Likewise here, Plaintiff has alleged only traditional state-law tort claims against two private actors, and no federal law is necessary to decide the case.

Nor can Defendants rely on some purported necessary interpretation of the federal common law of foreign relations, because they are raising the issue only as a defense. "Regardless of whether a court will 'necessarily' need to determine an issue"—which, as explained above, is not the case here—"if the issue must be affirmatively raised by the defendant, then it is an affirmative defense, not an essential element of the plaintiff's claim." *Tokhtaman* v. *Human Care, LLC*, 2018 WL 5447543, at *2 (S.D.N.Y. Oct. 29, 2018).  Under *Grable*, Defendants cannot use an affirmative defense to create subject-matter jurisdiction.  The "substantial question test" under *Grable* "does not alter the rule that a potential federal defense is not enough to create federal jurisdiction."  *Id.*  Consequently, "jurisdiction is inappropriate under *Grable* where a federal issue is 'not necessarily raised by [the plaintiff's] affirmative claims,' but rather 'comes into the case as a defense.'" *Standard & Poor's*, 23 F. Supp. 3d at 395 (quoting *Shinnecock Indian Nation*, 686 F.3d at 140 n.4).

Because "Defendants have failed to demonstrate . . . the first *Grable* factor" that Plaintiff's claims "necessarily raise" an issue of federal law, Defendants have failed to establish federal court jurisdiction, and the Court may "forego an analysis of the remaining factors." *Benjamin Wey*, 2019 WL 1324416, at *3.

**B.   Plaintiff's State-Law Claims Raise No "Actually Disputed" Issue of Federal Law.**

The Notice of Removal also is deficient on the second *Grable* factor.  A defendant who "fails to elaborate on the precise contours" of an actual dispute of federal law "or explain how it is central to the resolution of Plaintiff's claims . . . has simply not established that there is an actual disagreement about an interpretation of federal law that is material to the claims at issue." *McLaughlin* v. *Bayer Essure, Inc.*, 2018 WL 3535142, at *4 (E.D. Pa. July 23, 2018).  Defendants have stated only that this case would force a court to "resolve a dispute" between Plaintiff, Saudi Arabia, and the UAE.  (ECF No. 1, ¶ 6.)  They have not explained how the application of federal law would change the outcome of this case or why the interpretation of federal law is material to Plaintiff's state-law claims.

**C.   Plaintiff's State-Law Claims Raise No "Substantial" Issue of Federal Law.**

Defendants also have failed to demonstrate that the supposed federal question is substantial in the relevant sense.  "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit . . . . The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole."  *Gunn*, 568 U.S. at 260.  An issue is substantial "if it 'present[s] a nearly 'pure issue of law,' one that could be settled once and for all and would govern numerous . . . other cases.'  By contrast, issues that have 'fact-bound and situation-specific' effects are not sufficient to establish federal arising under jurisdiction." *CWCapital Cobalt VR Ltd.* v. *CWCapital Invs. LLC*, 2018 WL 2731270, at *5 (S.D.N.Y. May 23, 2018) (quoting *Empire*, 547 U.S. at 700–01).

Plaintiff's claims turn not on federal law, but rather on a fact-specific inquiry into whether, under New York law, Defendants committed fraud, entered into a conspiracy to commit fraud, and aided and abetted fraud.  The resolution of these claims will not have a far-reaching

impact on federal law.  Therefore, even if the Court were to "assume that plaintiffs' state common law claims could raise a federal issue as pled, the federal issue is at best insubstantial" because "[n]either the federal government nor the federal system as a whole has a pressing interest in ensuring that a federal forum is available to defendants in state tort suits." *Fracasse*, 747 F.3d at 145.  Defendants have therefore failed to demonstrate that there is a "substantial" federal issue in this litigation.

> **D.      Plaintiff's State-Law Claims Are Not "Capable of Resolution in Federal Court Without Disrupting the Federal-State Balance Approved by Congress."**

Defendants likewise have asserted no facts in the Notice of Removal that satisfy the fourth *Grable* factor, which requires that Defendants demonstrate that the claims are "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.  Where, as here, a plaintiff's state-law cause of action is structured as a "run-of-the-mill" state-law claim, "governed by state law standards and analyzed using the familiar elements applied" under New York law, "[r]espect for the state-federal balance also inclines against attachment of federal question jurisdiction." *Liana Carrier Ltd.* v. *Pure Biofuels Corp.*, 672 Fed. App'x 85, 92 (2d Cir. 2016).  In order to maintain the federal-state balance, "[t]he Supreme Court has consistently made clear 'the need to give due regard to the rightful independence of state governments – and more particularly, to the power of the States to provide for the determination of controversies in their courts.'" *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Manning*, 136 S. Ct. 1562, 1573 (2016)).

## V.      Plaintiff Is Entitled to an Award of Attorney Fees and Costs.

Plaintiff respectfully requests that the Court award attorney fees and costs against Defendants because they provide no reasonable basis for removal.  Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual

expenses, including attorney fees, incurred as a result of the removal."  The grounds for removal

need not be "frivolous . . . or without foundation to justify an award of fees—only

unreasonable."  *Gen. Elec. Capital Corp.* v. *Cutler*, 2015 WL 7444627, at *2 (S.D.N.Y. Nov. 23,

2015) (internal quotation marks and citation omitted).  The Second Circuit, noting that it is

"settled law that a case may not be removed to federal court on the basis of a federal defense,"

has affirmed costs where the removing party "base[d] her arguments for federal jurisdiction on

various asserted federal defenses," and therefore "lacked an objectively reasonable basis for

seeking removal."  *Savino* v. *Savino*, 590 F. App'x 80, 81 (2d Cir. 2015) (internal quotations

marks and citations omitted).

      Here, just as in *Savino*, Defendants have no objectively reasonable basis for

removal.  Their Notice of Removal lacks the requisite plausible allegations that the law requires.

Indeed, Defendants' arguments are foreclosed by Supreme Court and Second Circuit precedent.

Where, as here, the "Court lacks jurisdiction based on a straightforward application of Second

Circuit precedent to the facts of this case," there is no objectively reasonable basis for removal

and the Court should award fees and costs under 28 U.S.C. § 1447(c).  *Mosher* v. *Davita*

*Healthcare Partners Inc.*, 2016 WL 2997509, at *3 (S.D.N.Y. May 23, 2016).[8]

## CONCLUSION

      For the reasons set forth above, Plaintiff respectfully requests that the Court grant

its motion to remand and award its reasonable attorney fees and costs.

---

[8]    Upon request, Plaintiff will submit an itemized list of its fees and costs incurred as a result of the removal.

Dated:  New York, New York
        July 12, 2019

                                    PAUL, WEISS, RIFKIND, WHARTON
                                    & GARRISON LLP

                                    By: /s/ Daniel J. Kramer

                                    Daniel J. Kramer
                                    Theodore V. Wells, Jr.
                                    Andrew J. Ehrlich
                                    Geoffrey R. Chepiga
                                    1285 Avenue of the Americas
                                    New York, NY 10019-6064
                                    (212) 373-3000
                                    dkramer@paulweiss.com
                                    twells@paulweiss.com
                                    aehrlich@paulweiss.com
                                    gchepiga@paulweiss.com

                                    *Attorneys for Plaintiff State of Qatar*