October 4, 2019

**By ECF**

Honorable Alison J. Nathan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *State of Qatar* v. *First Abu Dhabi Bank PJSC, et al.*
Case No. 1:19-cv-05567 (AJN) (JLC) (S.D.N.Y.)

**Joint Status Letter**

Dear Judge Nathan:

In accordance with Your Honor's July 15, 2019 Notice of Initial Pretrial Conference (ECF No. 28), counsel for the parties provide this joint status letter in advance of the pretrial conference scheduled for Friday, October 11, 2019.

**I.     Statement of the Case and Principal Defenses Thereto**

**A.     Plaintiff's Statement**

Plaintiff State of Qatar alleges that Samba Financial Group SJSC ("Samba"), First Abu Dhabi Bank PJSC ("FAB"), and John Doe Defendants 1–20 (collectively "Defendants") engaged in a brazen scheme to manipulate Qatar's currency (the "Riyal") and its financial instruments, including its sovereign bonds, and cause significant financial harm to Qatar.

The plan included, among other things, a scheme to "break the peg"—the fixed exchange rate at which the Riyal has traded to the U.S. Dollar for more than a decade.  (ECF No. 2, Ex. A-

1, ¶ 5.)  Defendants submitted thousands of fictitious and depreciated bid/ask quotes to foreign currency platforms that Thomson Reuters and Bloomberg L.P. hosted in New York County, in order to manipulate key foreign exchange rates that Reuters and Bloomberg compiled and published in New York County.  But Defendants' quotes were phony.  FAB, Samba, and others repeatedly refused to transact with counterparties at the prices they were quoting.  FAB and others also attacked Qatar's sovereign bonds by engaging in crossing transactions (wash sales) and purchasing credit default swaps, which rise in value as bond prices fall.

Defendants' scheme is set out in part in an extraordinary PowerPoint presentation created by Banque Havilland (the "Banque Havilland Presentation").  The Banque Havilland Presentation outlined a detailed strategy to manipulate Qatar's currency and financial instruments, which Defendants executed in New York and elsewhere.

Defendants' manipulative conduct had the desired effect—it caused the Bloomberg and Reuters exchange rates for the Riyal and the price of U.S. Dollar-denominated Qatari bonds to decline significantly.  In response, Plaintiff was forced to liquidate investments, including nearly $3 billion in U.S. Treasury bills and notes held by Plaintiff in accounts in New York County.  Plaintiff also drew down its foreign currency reserves, using more than $40 billion to support its currency.  To the best of Plaintiff's knowledge, the manipulation ceased as soon as the Banque Havilland Presentation was leaked to the press.  Plaintiff now brings state-law claims against the Defendants for fraud, aiding and abetting fraud, and conspiracy to commit fraud.

### B.   Defendants' Counterstatement and Defenses

Defendants reject all aspects of Plaintiff's colorful rendering of events.  There was no "brazen scheme"; there were no "fictitious" bid/ask quotes related to the Qatari Riyal; and there was no concerted effort to "break the peg" (in Plaintiff's words).  Rather, any fluctuation in the value of that currency relative to the US Dollar was a function of macro-economic and geo-political events.  Straightforward economics and well-understood market forces, rather than cloak-and-dagger (and non-existent) "schemes," explain the currency movement.  And the State of Qatar has no basis to seek recompense from Defendants for its choice to prop up its currency when the market moved against it.  Hubris and indignation are not actionable in US courts.

Plaintiff's Complaint suffers from two flaws:  first, as the foregoing implies, it is fiction, a slander based on shoddy journalism, unfounded speculation, and hope.  Plaintiff's pleading shows it has nothing more than fevered—and false—speculations about a "presentation" prepared by a junior analyst at an obscure bank in Luxembourg (Banque Havilland).  Prior to receiving the Complaint, Defendants never saw or heard of that "presentation," much less acted on it, and knew nothing about this alleged "scheme" until the publication of the article that Qatar now seeks to turn into a lawsuit.  Samba and FAB, furthermore, did not communicate about *any* aspect of the topics in the alleged "presentation," including *any* concerted action with respect to the Qatari currency.  Plaintiff will find no support for its claims of fraud if discovery ever occurs in this action.

Second, the Complaint ignores the context in which the currency movements occurred.  Qatar, and various other Gulf states, had a breakdown in diplomatic relations in the summer of 2017.  As part of that situation, a number of countries, including the KSA and the UAE, severed

trade and travel links with Qatar. Any temporary move in the exchange rate between the US Dollar and the Qatari Riyal was caused by the global market's consistent (and expected) reaction to those events.

There is no merit to Plaintiff's allegations of conspiracy or fraud. Plaintiff will not identify competent evidence that supports its reckless allegations, much less the kind of "clear and convincing" evidence required to prove each element of a fraud claim.[1] In particular, Plaintiff will find no communications between Defendants regarding a plan to harm Qatar and no evidence of collusive or clandestine activities. It will learn that the core conduct alleged—the manner in which Defendants quoted Dollar/Qatari Riyal forex transactions—contained no falsehoods and nothing "off market," whether before or during the "blockade" (as Plaintiff calls it). Defendants followed the market, offering quotations that mirrored leading brokers—they did not *ever* lead or make the forex market for the Qatari Riyal.

But this action should never proceed to discovery, because it must be dismissed as to both Samba and FAB by operation of the Foreign Sovereign Immunities Act ("FSIA") and for lack of personal jurisdiction. Equally so, as a matter of law, the Complaint fails to state a claim. It is noteworthy that the Complaint does not identify a single representation that either FAB or Samba made to the State of Qatar, let alone a misrepresentation of material fact that Samba or FAB knowingly made and on which the State of Qatar relied. In fact, there is no description in the Complaint of any Qatari government official relying upon any representation of either defendant, much less the particularized description of the "who, what, where, how, and why" required by Rule 9(b).

To embrace Qatar's fraud theory, one would have to conclude that Qatar's government and central bank were hoodwinked as to the true value of their own currency. The prospect that its most senior finance and banking officials (each of whom would be a witness in this case, should if it ever proceed to discovery) were duped to the tune of $40 billion by the foreign exchange quotes of two regional banks is absurd—and demonstrably untrue.

## II.     Statements as to Jurisdiction and Venue

### A.     Plaintiff's Statement of Jurisdiction and Venue

On April 8, 2019, Plaintiff filed its Complaint in the Supreme Court of the State of New York, County of New York. (ECF No. 2, Ex. A-1.) On June 14, 2019, Samba filed a Notice of Removal (ECF No. 1), and FAB filed a "Consent to Removal" in which it "consents to and joins in the Notice of Removal" filed by Samba (ECF No. 5). On July 12, 2019, Plaintiff filed a motion to remand. (ECF No. 25.) For the reasons stated in Plaintiff's motion to remand, this action should be remanded to the New York Supreme Court.

Defendants are subject to personal jurisdiction in New York County under CPLR 301 and 302 because, among other things, they purposefully and knowingly submitted fraudulent quotes

---

[1] Plaintiff's remand motion repeatedly takes the position that its case is a garden-variety fraud claim pleaded under New York law. If so, Plaintiff will need to plead *each* element of its claim with specificity and prove each element by clear and convincing evidence. *See Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966 (2d Cir. 1987) (essential elements of fraud claim must be proven by clear and convincing evidence).

to foreign exchange platforms and data centers located in New York County. These quotes are relied upon by investors in New York County and elsewhere. Defendants' actions influenced financial markets in New York County and harmed Plaintiff, as well as other investors who held Riyals or Qatari financial instruments in New York County. Among other things, Plaintiff was forced to liquidate billions of dollars in investments held in New York County and elsewhere, and use those proceeds to stabilize Qatar's currency.

### B. Defendants' Statement of Jurisdiction and Venue

On June 14, 2019, Samba removed the matter to this Court. (ECF No. 1.) On July 12, 2019, Plaintiff filed a motion to remand. (ECF No. 25.) On August 26, Defendants opposed Plaintiff's motion (the "Opposition"). (ECF No. 29, 32.) Plaintiff submitted a reply brief on September 25, 2019. (ECF 33.)

For the reasons stated in the Opposition, removal is warranted and appropriate. The suit brought by the State of Qatar, an ally of the United States, is interwoven with an ongoing dispute between Qatar and two other US allies (the KSA and the UAE). Qatar's pleading concedes as much, asserting that its causes of action arise from a secret "scheme" undertaken by Defendants (and unnamed others), acting as agents of the KSA and UAE, to wage "financial warfare" in furtherance of an ongoing "blockade" (Plaintiff's word) against Qatar . Based on those allegations, and for the reasons articulated in Samba's Notice of Removal and Opposition, removal is appropriate pursuant to the *Grable* doctrine and the FSIA.

Defendant reserve all rights with respect to challenging personal jurisdiction, should the Court conclude both that it has subject matter jurisdiction and that Qatar's claims are justiciable.

## III. Outstanding Motions

As noted, Plaintiff filed a motion to remand on July 12, 2019. FAB and Samba filed an opposition on August 26, 2019. Plaintiff filed its reply on September 25, 2019. There are no other outstanding motions or requests to file motions.

## IV. Status of Discovery and Discovery Necessary For Settlement Discussions

### A. Plaintiff's Statement Regarding Discovery

Plaintiff served document requests on Defendants FAB and Samba and subpoenas on certain third parties before this case was removed to federal court.

Plaintiff believes that discovery is necessary on the following topics: (1) information regarding quotes for Riyals or Qatari bonds that Defendants submitted to the Bloomberg and Reuters platforms between January 2017 and July 2018; (2) information regarding any transactions involving Riyals or Qatari bonds that FAB or Samba executed, or declined to execute, between January 2017 and July 2018; (3) information regarding contacts between FAB or Samba, on the one hand, and persons associated with Banque Havilland or other conspirators, on the other hand; and (4) information regarding the Banque Havilland Presentation. This information is necessary, among other things, to develop the parties' positions and identify John Doe defendants.

Discovery should go forward now. No good cause exists to delay the start of discovery any further than it has already been delayed. Plaintiff served initial requests for production months ago, but discovery has been unnecessarily delayed by Defendants' groundless removal of the case to federal court. Discovery in this case will be extensive, and include requests to multiple financial institutions in the U.S. and overseas. Overseas discovery will likely necessitate time-consuming requests pursuant to letters rogatory or the Hague Convention, which can take months. Pushing back the start of discovery any further will lead to further delays and a drawn out and unmanageable schedule. Defendants' desire to stay all discovery is a blatant attempt to shield the identities of their co-conspirators and frustrate the prosecution of this case.

### B. Defendants' Statement Regarding Discovery

Discovery should not proceed at this time. Prior to Samba's filing of its Notice of Removal, and pursuant to the New York Civil Practice Law and Rules, Plaintiff served subpoenas on a number of third parties. (Plaintiff claims that it effected valid service of Requests for Production on Defendants; Defendants disagree that they were properly served, but as explained below, any discovery served in New York State court is invalid and of no effect following removal to this Court.) Plaintiff maintains that it can push forward with discovery on Defendants and third parties while its motion to remand remains pending.

Plaintiff's position is anomalous. Samba's removal of the action to federal court has rendered moot whatever effect the requests and subpoenas issued in the New York state court proceeding might have had. Plaintiff itself argued in its motion to remand that this "Court lacks jurisdiction" and that the matter should be remanded to state court. (ECF No. 26 at 23.) Despite claiming the Court has no subject matter jurisdiction here,—Plaintiff seeks to invoke the power of this Court to propound discovery on Defendants and third parties. In light of Plaintiff's challenge to federal jurisdiction, discovery should not proceed at least until its motion to remand is resolved. Moreover, the fanciful nature of the allegations—and the breadth of the third-party discovery sought almost immediately by Plaintiff prior to removal—show that this an unfounded story in search of facts. Discovery is inappropriate in such circumstances.

## V. Settlement Discussions

As required by the Court's rules, the parties discussed the possibility of settlement during the Rule 26(f) conference held on August 21, 2019. There is no prospect of an agreement to settle this case at this time.

## VI. Estimated Length of Trial

It is difficult to estimate how long trial will last since there has yet been no discovery. Plaintiff estimates that trial may last between four and six weeks.

## VII. Other Information the Parties Believe May Assist the Court in Resolving the Action

If the Court requires any further information, the parties will respond promptly to the Court's instructions.

Respectfully submitted,

| PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP | LATHAM & WATKINS, LLP |
|---|---|
| By:   /s/ Daniel J. Kramer<br>Daniel J. Kramer<br>    (dkramer@paulweiss.com)<br>Theodore V. Wells, Jr.<br>    (twells@paulweiss.com)<br>Andrew J. Ehrlich<br>    (aehrlich@paulweiss.com)<br>Geoffrey R. Chepiga<br>    (gchepiga@paulweiss.com)<br>1285 Avenue of the Americas<br>New York, New York 10019<br>Tel.: (212) 373-3000<br><br>*Attorneys for Plaintiff State of Qatar* | By:   /s/ Michael Lacovara<br>Michael Lacovara<br>    (michael.lacovara@lw.com)<br>Joseph Serino, Jr.<br>    (joseph.serino@lw.com)<br>Eric Leon<br>    (eric.leon@lw.com)<br>885 Third Avenue<br>New York, New York 10022<br>Tel.: (212) 906-1200<br><br>*Attorneys for Defendant Samba Financial Group SJSC* |

AKIN GUMP STRAUSS
 HAUER & FELD LLP

By:   /s/ Robert H. Pees
Robert H. Pees
    (rpees@akingump.com)
One Bryant Park
New York, New York 10036
Tel.: (212) 872-1000

*Attorneys for Defendant First Abu Dhabi Bank PJSC*